**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| ROGER BLACKSTOCK, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) 1:09CV828 |
| | ) |
| JUDY BRANDON, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On July 19, 1984, in the Superior Court of Guilford County, Petitioner was convicted by a jury of first-degree rape, first-degree sexual offense, assault with a deadly weapon with intent to kill inflicting serious bodily injury, and common law robbery in cases 83 CRS 64447-9 and 84 CRS 15015. (Docket Entry 6, Ex 4.) He received two consecutive life sentences for the rape and sexual assault convictions, a concurrent twenty-year sentence for the assault with a deadly weapon conviction, and a concurrent ten-year sentence for the robbery conviction. Petitioner did pursue a direct appeal, but his convictions were upheld. State v. Blackstock, 314 N.C. 232, 333 S.E.2d 245 (1985).

Following the denial of his direct appeal, Petitioner acted relatively quickly in filing three motions for appropriate relief in the state courts. They were filed on August 22, 1986, July 17, 1987, and November 14, 1988. (Docket Entry 6, Ex. 4.) Following the denial of these motions, Petitioner sought further review as to

at least two of his motions, but the North Carolina Supreme Court denied certiorari. (Id., Exs. 2, 3.) Almost twenty years later, on March 9, 2009, Petitioner filed yet another motion for appropriate relief, which the trial court denied on March 31, 2009. (Id., Ex. 4.) Petitioner then sought certiorari review from the North Carolina Court of Appeals and the North Carolina Supreme Court, which each denied such requests on May 18, 2009, and August 27, 2009, respectively. (Id., Exs. 5, 6.) Petitioner thereafter filed his instant Petition, which he dated as submitted to the prison mail system on October 21, 2009. (Docket Entry 1 at 15.) Respondent has moved to dismiss (Docket Entry 5) and Petitioner has filed a number of documents in response to that motion (Docket Entries 12-16).[1]

## Petitioner's Claims

Petitioner raises four claims for relief in the Petition:

1) amendment by the trial court of his indictment for "Robbery with A Dangerous Weapon" to "Common Law Robbery" (Docket Entry 1 at 5);

2) failure of his indictments for first-degree rape and first-degree sexual offense to include enough detail and error by the trial court in instructing the jury on these charges (i.e., instructing on matters not detailed in the indictments or covered directly by the victim's trial testimony) (Id. at 6-7, 16-17);

---

[1] Petitioner also has filed a renewed motion for appointment of counsel. (Docket Entry 17.) In light of the disposition proposed herein, the Court will deny that motion.

3) variance between the language of his indictment for assault with a deadly weapon with intent to kill inflicting serious injury on the one hand and the language of the arrest warrant for said charge and the trial testimony of the victim on the other hand (Id. at 8, 18); and

4) ineffective assistance of trial counsel "when he allowed the Trial Court to proceed upon defective indictments and allowing the Trial Court to incorporate, add, delete, and make false statements of the facts to the jury, such as testimony that was never given by the alleged victim, erroneous jury Instructions" (Id. at 10).

## Discussion

Respondent requests dismissal on the ground that the petition was filed[2] outside of the one-year limitation period imposed by the Antiterrorism and Effective Death Penalty Act of 1996, P.L. 104-132 ("AEDPA").  28 U.S.C. § 2244(d)(1).  The AEDPA amendments apply to

---

[2] "In [Houston v. Lack, 487 U.S. 266 (1988)], the Supreme Court held that a *pro se* prisoner's notice of appeal is filed on the date that it is submitted to prison officials for forwarding to the district court, rather than on the date that it is received by the clerk." Morales-Rivera v. United States, 184 F.3d 109, 110 (1st Cir. 1999).  At least eight circuits "have applied th[is] prisoner mailbox rule to [establish the 'filing' date of] motions under 28 U.S.C. § 2254 or § 2255." Id. at 110-11 & n.3.  In two published opinions issued since that consensus emerged, however, the United States Court of Appeals for the Fourth Circuit has declined to decide whether the prison mailbox rule applies in this context.  See Allen v. Mitchell, 276 F.3d 183, 184 n.1 (4th Cir. 2001) ("Allen's petition was dated March 9, 2000, and it should arguably be treated as having been filed on that date. Cf. United States v. Torres, 211 F.3d 836, 837 n.3 (4th Cir. 2000) (declining to decide whether prison mailbox rule applies to filing of federal collateral review applications in district court).  We take no position on that question here."); but see Smith v. Woodard, 57 Fed. Appx. 167, 167 n.* (4th Cir. 2003) (implying that Houston's rule governed filing date of § 2254 petition); Ostrander v. Angelone, 43 Fed. Appx. 684, 684-85 (4th Cir. 2002) (same).  Because the difference between the date Petitioner signed his Petition (i.e., the earliest date he could have given it to prison officials for mailing) and the date the Clerk received it would not affect disposition of the timeliness issue, the Court declines to consider this matter further.

petitions filed under § 2254 after April 24, 1996. <u>Lindh v.</u>
<u>Murphy</u>, 521 U.S. 320 (1997).

In order to assess Respondent's statute of limitation
argument, the Court first must determine when Petitioner's one-year
period to file his § 2254 petition commenced. In this regard, the
United States Court of Appeals for the Fourth Circuit has explained
that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period
> <u>begins to run from</u> the latest of several potential
> starting dates:
>
> (A) the date on which the judgment became final by the
> conclusion of direct review or the expiration of the time
> for seeking such review;
>
> (B) the date on which the impediment to filing an
> application created by State action in violation of the
> Constitution or laws of the United States is removed, if
> the applicant was prevented from filing by such State
> action;
>
> (C) the date on which the constitutional right asserted
> was initially recognized by the Supreme Court, if the
> right has been newly recognized by the Supreme Court and
> made retroactively applicable to cases on collateral
> review; or
>
> (D) the date on which the factual predicate of the claim
> or claims presented could have been discovered through
> the exercise of due diligence.

<u>Green v. Johnson</u>, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis
added).

In most cases, a petitioner's one-year limitation period
commences on "the date on which the judgment became final by the
conclusion of direct review or the expiration of the time for
seeking such review," 28 U.S.C. § 2244(d)(1)(A). The Court thus

will first consider when direct review (or the time for seeking direct review) of Petitioner's underlying conviction ended.

Petitioner's convictions became final on direct review when his time for seeking certiorari from the United States Supreme Court expired 90 days after the North Carolina Supreme Court denied his appeal. See generally Harris v. Hutchinson, 209 F.3d 325, 328 & n.1 (4th Cir. 2000). In other words, Petitioner's convictions became final on or about November 11, 1985, or more than a decade before the time limits in AEDPA became effective on April 24, 1996. Petitioner therefore had one year after AEDPA's effective date, or until April 24, 1997, to file his petition. Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000). He did not file the instant Petition until approximately twelve and a half years after that date.

Petitioner did file a motion for appropriate relief in the state courts in March of 2009, and proper state collateral filings toll § 2244(d)'s one-year federal filing period during their pendency. See Taylor v. Lee, 186 F.3d 551, 561 (4th Cir. 1999).[3] However, once the time to file has expired, new filings in the state courts do not revive or restart the AEDPA limitation period. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000). Therefore, Petitioner's 2009 state court filings do not affect the timeliness of his Petition.

---

[3]Petitioner also made state court filings in the late 1980s, well before AEDPA's passage. He does not contend that any of those filings were still pending at the time AEDPA became effective.

In light of the foregoing circumstances, Petitioner properly does not contend that the Petition is timely under § 2244(d)(1)(A). However, as noted above, the time limit under AEDPA can also start running at other times, such as the date of the removal of an unlawful state-created impediment to filing, the date of recognition by the United States Supreme Court of a constitutional right made retroactively applicable on collateral review, and/or the date on which the discovery of the factual predicate for the petitioner's claims first would have become possible through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(B), (C), (D).

Petitioner attempts to rely on both the state-created impediment and the newly-discoverable factual predicate provisions of § 2244(d)(1) to make his claims timely. In support, he asserts that the State kept him from pursuing his claims by hiding exculpatory evidence "for over 12 ½ years." (Docket Entry 12 ¶ 12.) However, the exhibits that Petitioner submits to bolster that argument defeat it instead.

Petitioner's first exhibit is a letter dated May 15, 2008, he sent to the Administrative Office of the Courts in North Carolina which he says was forwarded to the Clerk of Superior Court for Guilford County. In the letter, Petitioner requests copies of his indictments and states that he had been trying to get them for "a couple of years." (Id. Ex. 1.) The second exhibit contains an undated letter from the Clerk of Superior Court in Guilford County, addressed to Petitioner, which states that it was written in response to his May 15, 2008 letter. The letter reports that

copies of the records Petitioner requested were enclosed and that they were free because he had not requested them previously. (Id. Ex. 2.)  The third exhibit consists of a letter to Petitioner from North Carolina Prisoner Legal Services (NCPLS) dated February 15, 2007, which says NCPLS had sought copies of the indictments in 1998, but had obtained only the rape indictment.  The letter further explains that NCPLS sent a new request for the other indictments and that Petitioner could try contacting the attorney who represented him at trial for copies.  (Id. Ex. 3.) Petitioner's fourth and final exhibit is a letter from the SBI Crime Laboratory, dated June 24, 1998, which explains to Petitioner that he needed to seek a court order or to contact the prosecuting District Attorney if he wished to obtain information on a rape kit that was listed as evidence in his case.  (Id. Ex. 4.)[4]

The exhibits produced by Petitioner in no way indicate that the State hid exculpatory evidence from Petitioner.  The indictments in his cases do not constitute evidence, but rather documents that formed a part of his cases from the very beginning. Whether or not Petitioner later obtained copies in prison, they would have been a part of the record at the time of his trial. Therefore, the factual predicate for Petitioner's claims existed in a manner accessible to him through the exercise of due diligence.

Further, none of Petitioner's materials suggest that he or his representatives ever made an effort to obtain his indictments prior

---

[4] Petitioner also submits a newspaper article reporting that the SBI Crime Laboratory was reviewing old cases to see if any evidence had been withheld from defendants.  (Docket Entry 13, Ex. 1.)  This article has no apparent relevance to Petitioner's specific claims.

to the NCPLS request in 1998.  By that time, fourteen years had passed since Petitioner's trial, two years had elapsed following AEDPA's effective date, and Petitioner's federal filing deadline had expired.  Petitioner did not make a diligent effort to obtain his indictments between his conviction in 1984 and the NCPLS request in 1998.  Further, following the NCPLS 1998 request for the indictments, Petitioner's exhibits show another gap of more than nine years before Petitioner resumed seeking copies of his indictments.  If his federal habeas filing period had not run before, it surely ran during this span.

As for the contents of any rape kit, Petitioner has shown neither how such matters bear any connection to the claims in his Petition nor why, in the exercise of due diligence, he lacked an opportunity to obtain such material earlier.  Petitioner's only attempt in the record was made in 2008, well after his time to file a federal habeas action passed.

In sum, Petitioner presents nothing to show that the State unlawfully impeded him from filing or that he lacked the ability to discover the factual predicate for his claims through the use of due diligence starting in 1984.  As a result, Petitioner cannot satisfy the requirements of § 2244(d)(1)(B) or (D).

Petitioner also raises other arguments in seeking to have his claims heard.  In the Petition, he contends that his claims should proceed because he cannot afford an attorney, he has had to research the case himself, the North Carolina prison system has no law libraries, and NCPLS and other "legal organizations all over

this country" have refused to help him. (Docket Entry 1 at 14.)
Petitioner further asserts that, because his claims challenge the
state courts' jurisdiction, he can bring them at any time. (Id.)
Finally, in three of the documents filed in response to the Motion
to Dismiss, Petitioner also mentions his innocence or actual
innocence. (Docket Entry 12, ¶ 5; Docket Entry 14, ¶ 5; Docket
Entry 16 at 4.)

Petitioner's arguments concerning his lack of legal
representation and the necessity of conducting his own research
appear to represent arguments in favor of equitable tolling. The
Supreme Court has determined that the one-year limitation period is
subject to equitable tolling. Holland v. Florida, 130 S.Ct. 2549,
2562 (2010). Equitable tolling may apply when a petitioner "shows
'(1) that he has been pursuing his rights diligently, and (2) that
some extraordinary circumstance stood in his way' and prevented
timely filing." Id. (quoting Pace v. DiGuglielmo, 544 U.S. 408,
418 (2005)). Unfamiliarity with the legal process and lack of
representation do not constitute grounds for equitable tolling.
United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004).

Further, Petitioner demonstrated the ability to file at least
four motions for appropriate relief in the state courts, including
three prior to the passage of AEDPA. Petitioner has failed to show
that he lacked the ability to bring a federal habeas action within
a year of the effective date of AEDPA or, for that matter, even
years earlier. Because he has not established extraordinary

circumstances or sufficient diligence, Petitioner's request for equitable tolling should be denied.

Petitioner's argument that the Court should hear his claims because of their alleged jurisdictional nature also lacks merit. Challenges to subject matter jurisdiction related to state court indictments generally involve matters of state law not cognizable on federal habeas review. Wright v. Angelone, 151 F.3d 151, 157-58 (4th. Cir. 1998); Ashford v. Edwards, 780 F.2d 405, 407 (4th Cir. 1985). Moreover, alleged defects in an indictment do not deprive a trial court of jurisdiction. See United States v. Cotton, 535 U.S. 625, 629-31 (2002). Finally, AEDPA's statute of limitation does not contain any exception for state law jurisdictional claims and courts addressing this issue have rejected requests to recognize such an exception. See, e.g., Griffin v. Padula, 518 F. Supp. 2d 671, 677 (D.S.C. 2007), appeal dismissed, 271 Fed. Appx. 370 (4th Cir. 2008); Johnny Drawdy v. Secretary, Dep't of Corr., No. 8:09-CV-1993-T-30AEP, 2009 WL 3644626, at *2 (M.D. Fla. Nov. 2, 2009) (unpublished) (citing Johnson v. Jones, Civil Action No. 3:06cv071, 2006 WL 2092601, at *2 (M.D. Ala. July 27, 2006) (unpublished), and Carpenter v. Motley, Civil Action No. 1:07CV-P14-R, 2007 WL 4553340, at *3 (W.D. Ky. Dec. 18, 2007) (unpublished)). For all of these reasons, the alleged jurisdictional nature of Petitioner's claims does not affect the timeliness of the Petition.

Finally, Petitioner asserts that the Court should consider his Petition despite its untimeliness because he is actually innocent.

Courts frequently confront allegations related to actual innocence when petitioners seek to avoid dismissal due to procedural default. Schlup v. Delo, 513 U.S. 298, 315 (1995). The standard for demonstrating actual innocence is very high. Generally, a petitioner must "support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." Id. at 324. Such evidence must demonstrate that "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Id. at 327 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)). In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id. At a minimum, a petitioner must show "factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998).

Petitioner faces a further challenge because Respondent has not simply interposed a procedural bar, but rather has asserted a statute of limitation defense under 28 U.S.C. § 2244(d)(1). Neither the United States Supreme Court nor United States Court of Appeals for the Fourth Circuit have recognized an actual innocence exception in this context. Other federal courts of appeals have divided over this issue. Compare Souter v. Jones, 395 F.3d 577, 597-601 (6th Cir. 2005) (allowing equitable tolling of statute of limitation based on showing of actual innocence under Schlup

standard) with Escamilla v. Jungwirth, 426 F.3d 868, 871-72 (7th Cir. 2005) (ruling that actual innocence has no bearing on time-bar).

Assuming that an actual innocence exception exists in this context, Petitioner falls far short of the necessary showing. Petitioner raises actual innocence at various points, but never fleshes out his theory with any evidence or even a coherent argument. On the other hand, as the undersigned noted in a previous order, the North Carolina Supreme Court found on direct review that the evidence against Petitioner was "strong" and that the case against him was "compelling." (Docket Entry 7 at 7 n.4 (citing Blackstock, 314 N.C. at 244).) The facts set out by that court more than support those conclusions. Blackstock, 314 N.C. at 233-35. Petitioner has produced absolutely nothing to counter them. Accordingly, if an actual innocence exception to § 2244(d) exists, Petitioner does not qualify for it.

For all the foregoing reasons,

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion to Dismiss (Docket Entry 5) be **GRANTED,** that the Habeas Petition (Docket Entry 1) be **DISMISSED,** and that Judgment be entered **DISMISSING** this action.

**IT IS ORDERED** that Petitioner's Motion for Reconsideration for Appointment of Counsel (Docket Entry 17) is **DENIED.**

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

October 5, 2010